Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEISHA ANTHONY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONCORDIA LEGAL ADVISORS, PLLC, an Arizona limited liability company, MICHAEL MOCCIA, an individual, and DOES 1-10, inclusive, and each of them,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 *et seq.*]<br>2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 *et seq.*]<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff KEISHA ANTHONY ("Plaintiff") brings this Class Action Complaint against Defendants CONCORDIA LEGAL ADVISORS, PLLC ("CONCORDIA"), MICHAEL MOCCIA, and DOES 1-10, to stop their practice

of making unsolicited auto-dialed telemarketing calls to consumers' cellular telephones either themselves or through marketing affiliates of Defendant to be named later without having established internal Do-Not-Call policies, without first procuring express written consent as required by law, and to obtain redress for all persons similarly injured by Defendants' conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself, and, as to all other matters, upon information and belief:

## NATURE OF THE CASE

1.  In this case, CONCORDIA has violated and continues to violate the Telephone Consumer Protection Act, 42 U.S.C. 227, et seq. ("TCPA") and its regulations by placing unsolicited telemarketing calls to phone subscribers registered with the national Do Not Call registry without implementing an internal Do-Not-Call policy and without obtaining prior express written consent from the class of phone subscribers.

## JURISDICTION & VENUE

2.  Jurisdiction is proper under *28 U.S.C. § 1331* because this action arises under a federal statute, namely the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

3.  This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because each of the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceed $5 million. Further, none of the exceptions to CAFA apply.

4.  Venue is proper in the United States District Court for the Central District of California pursuant to *18 U.S.C. 1391(b)* and *18 U.S.C. § 1441(a)* because Defendants do business within the State of California and Plaintiff resides within the County of Riverside.

## PARTIES

5. Plaintiff, KEISHA ANTHONY, is a natural person residing in Riverside County, City of Corona, California and is a "person" as defined by *47 U.S.C. § 153 (39)*.

6. Defendant, CONCORDIA, is a limited liability company that exists under the laws of the State of Arizona. Its primary place of business and headquarters is located in Arizona.

7. Defendant MICHAEL MOCCIA is a natural person living in the State of Florida and is a member of the Florida State Bar.

8. The above-named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, but are believed to be third-party marketing affiliate companies used by Defendants CONCORDIA and MICHAEL MOCCIA to make calls to consumers. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

9. Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

10. Defendant CONCORDIA is in the business of collecting debts from consumers.

11. Defendant MICHAEL MOCCIA is an employee, or partner, or agent

of CONCORDIA.

12. To effectuate CONCORDIA's business, Defendants and the unidentified marking affiliates engage in telemarketing to reach consumers.

13. The hardware and software used by Defendant (or its affiliates) to make telemarketing calls is an automatic telephone dialing system ("ATDS") because, among other things, the equipment has the capacity to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator and to dial such numbers, en masse, in an automated fashion without human intervention.

14. Furthermore, the ATDS used by Defendant includes features that support a finding that Defendant uses a predictive dialer to place the phone calls in question.

15. On information and belief, Plaintiff alleges the technology used by Defendant is a predictive dialer because every time Plaintiff answered Defendant's phone calls, she was met with hold music, a pause, and an agent who appeared unprepared to speak with a customer.

16. On information and belief, Plaintiff also alleges that Defendant uses prerecorded voice telephone solicitation voicemails to solicit the consumer, and, in this case, Plaintiff, to call back to learn more about Defendant's business.

17. Predictive dialers have long been considered automatic telephone dialing systems by the FCC. The FCC's first ruling on the TCPA in 1992 recognized the importance of restrictions on equipment such as predictive dialers. Referring in part to "predictive dialers," the FCC opined that ". . . both live [solicitation calls, such as with a predictive dialer] and artificial prerecorded voice telephone solicitations should be subject to significant restrictions," 7 FCC Rcd. 8752, 8756 (F.C.C. September 17, 1992).

18. Since 2003, the FCC has definitively held that a predictive dialer system qualifies as ATDS under the TCPA. In re Rules and Regulations

**CLASS ACTION COMPLAINT**
-4-

Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 19 FCC Rcd. 14014, 14115 ¶¶ 131-134 (2003).

19. The FCC describes predictive dialers as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because no telemarketer is free to take the call.
>
> . . .
>
> [A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. <u>The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.</u>
>
> . . .
>
> Predictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call . . . Predictive dialers reduce the amount of down time for sales agents, as consumers are more likely to be on the line when the telemarketer completes a call.

*Id.* at ¶¶ 8 fn 31, 131, and 146. [Emphasis added].

20. Defendants fail to obtain consumers' prior express written consent as required by the TCPA to use such equipment to place such calls.

21. That is, Defendants make unauthorized auto-dialed calls to cellular subscribers who have not provided Defendant prior consent to place such calls.

22. In doing so, Defendants make unsolicited telemarketing calls to solicit consumers to enroll in their debt collection services in violation of the TCPA.

23. Plaintiff made multiple requests to be placed on Defendants' internal Do-Not-Call list and has been on the Federal Do-Not-Call list since October 27, 2021. However, Defendants continue to place telemarketing calls to Plaintiff as of

the filing of this complaint. Because of this, Plaintiff alleges that Defendant does not:

  a. Maintain a written Do-Not-Call policy;

  b. Record Do-Not-Call requests;

  c. Maintain an internal Do-Not-Call list; and/or

  d. Train its employees on how to handle Do-Not-Call requests.

24. By making the calls at issue in this Complaint without proper safeguards required by the FCC under 47 C.F.R. 64.1200(d), Defendants caused Plaintiff and members of the class actual harm and cognizable legal injury.

25. Defendants know or act in conscious disregard of the fact that their telemarketing calls to these cellular subscribers are unauthorized.

26. As such, Defendants not only invaded the personal privacy of Plaintiff and other putative Class members but also intentionally and repeatedly violated the TCPA.

27. To the extent the marketing affiliates made calls on behalf of both Defendants, Defendants knew about the calls, received the benefits of the calls, directed the calls to be placed, and ratified the calls. Both Defendants are liable for all calls placed on its behalf.

28. Plaintiff is the subscriber and customary user of a personal cellular telephone ("cell phone") number ending in 8524.

29. Plaintiff listed her cell phone number on the National Do-Not-Call list on October 27, 2021.

30. Despite having her cell phone number listed on the national Do-Not-Call list, Defendants began calling Plaintiff's cell phone number in or around April of 2024 for purposes of telemarketing their debt consolidation practices.

31. Defendants, themselves or through the marketing affiliates controlled by Defendants, were calling Plaintiff to promote their debt consolidation practice and solicit business from Plaintiff.

32. Defendants were spoofing their caller identity to appear to be a phone from a local caller to entice Plaintiff into answering her cell phone.

33. Defendants placed two to four calls a day to Plaintiff's cell phone.

34. Plaintiff never provided any verbal or written consent to Defendant that satisfied the requirements set forth in 47 C.F.R. 62.1200(f)(8)(i) or otherwise.

35. On at least two occasions between April 2024 and August 2024, Plaintiff answered Defendants' phone calls and told all Defendants to stop calling her cell phone.

36. All Defendants ignored the instructions to stop calling Plaintiff.

37. Each time Plaintiff answered any of the Defendants' calls, there would be a delay before an agent would respond to Plaintiff's salutations.

38. This delay in being connected to a live agent resulted from the dialing system Defendants were using to place the calls to Plaintiff and is evidence that the call was placed using predictive dialer technology.

39. Defendants have placed more than two phone calls to Plaintiff's cell phone using this same telephone dialing equipment.

40. Due to the frequency of phone calls, the vast amount of phone calls, and the fact that Defendants continued to place phone calls to Plaintiff's cellular telephone after multiple requests to stop calling, Plaintiff believes that the calls placed to her cell phone were not targeted or directed but were more likely calls placed through a number generator, which generates phone numbers randomly or sequentially.

41. Defendants have caused Plaintiff actual harm and cognizable legal injury by continuing to make unauthorized calls as alleged herein. The harm and injury include the aggravation, nuisance, and invasion of privacy that resulted from the receipt of such unwanted calls, in addition to a loss of value realized for the monies Plaintiff paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's use and enjoyment of her cell

phones, including the related data, software, and hardware components. Defendants also caused injury to her phone by causing wear and tear on their property, consuming battery life, interfering with her use and enjoyment of her cell phone, and appropriating cellular minutes and data.

42. Further, because of Plaintiff's multiple ignored requests to be placed on Defendants' internal Do-Not-Call list, Plaintiff believes that Defendants do not maintain an internal Do-Not-Call list and do not have Do-Not-Call policies.

43. To redress these injuries, Plaintiff, on behalf of herself and the Class of similarly situated individuals set forth below, brings this suit under the TCPA, which prohibits unsolicited text calls to cellular telephones. On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unauthorized auto-dialed calling activities (plus corresponding declaratory relief) and an award of statutory damages to the class members to be paid into a common fund for the benefit of the class members, together with costs and reasonable attorneys' fees.

## Class Allegations

44. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class as defined as follows:

> **No Consent Class:** All persons in the United States who (1) from the date of four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendants' products and services; (5) using the same equipment that was used to call Plaintiff; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff.

45. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant,

Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

46. **Numerosity:** The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made unsolicited to thousands of consumers who fall into the definition of the Class. The exact number of members of the Class can be identified through Defendants' records.

47. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class have sustained damages arising out of Defendants' uniform wrongful conduct.

48. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiff and their counsel have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

49. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

    a. Whether Defendants' conduct violated the TCPA;

     b. Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

     c. Whether Defendants systematically called consumers absent prior express written consent;

     d. Whether Defendants fail to maintain a written Do-Not-Call policy; and

     e. Whether Defendants made the calls using an automatic telephone dialing system or pre-recorded voice technology.

50. **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendants have acted or refused to act on grounds substantially similar towards all members of the Class so as to render final injunctive relief and corresponding declaratory relief appropriate so as to warrant certification under Rule 23(b)(2).

51. **Superiority & Manageability:** This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured. Also, there

are no pending governmental actions against Defendants for the same conduct.

## COUNT I – CONCORDIA
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b)
### On Behalf of Plaintiff and the No Consent Class

52. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-51.

53. Defendant made unsolicited auto-dialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class without their prior express written consent in an effort to generate business for Defendant's company.

54. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

    a. By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or pre-recorded voice; and

    b. The person is not required to sign the agreement (directly or indirectly) or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

55. Further, Defendant made the calls using equipment that played a pre-recorded voice or had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers, *en masse*, simultaneously and without human intervention.

56. By making unsolicited calls to Plaintiff and members of the Class's cellular telephones without prior express written consent and by utilizing a pre-recorded voice or ATDS, Defendant violated 47 U.S.C. § 227(b).

57. As a result of Defendant's unlawful conduct, Plaintiff and the

members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

58. Further, to the effect that Defendant knew that Plaintiff did not want to have auto-dialed calls placed to her cell phone by Defendant, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, treble damages equal to up to three times the statutory damages.

## COUNT II – CONCORDIA
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)
### On Behalf of Plaintiff and the No Consent Class

59. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-51.

60. Upon information and belief, the foregoing acts and omissions of Defendant, its affiliates, or agents constitute multiple violations of FCC regulation by making telemarketing solicitations despite lacking:

    a. A written Do-Not-Call policy, available upon demand;

    b. Training for its employees on how to handle a Do-Not-Call request;

    c. An internal Do-Not-Call list; and

    d. A subscription to the national Do-Not-Call lists by which it could scrub cell phone numbers to ensure compliance with the national Do-Not-Call requirements, all in violation of C.F.R. § 64.1200(d).

## COUNT III – MICHAEL MOCCIA
### Violation of the Telephone Consumer Protection Act – 47 U.S.C. § 227(b)
### On Behalf of Plaintiff and the No Consent Class

61. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-51.

62. Defendant made unsolicited auto-dialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class, without their prior express written consent in an effort to generate business for Defendant's company.

63. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

    a. By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or pre-recorded voice; and

    b. The person is no required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

64. Further, Defendant made the calls using equipment that played a pre-recorded voice or had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers, en masse, simultaneously and without human intervention.

65. By making the unsolicited calls to Plaintiff and members of the Class's cellular telephones without prior express written consent and by utilizing a pre-recorded voice or ATDS, Defendant violated 47 U.S.C. § 227(b).

66. As a result of Defendant's unlawful conduct, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

**CLASS ACTION COMPLAINT**
-13-

67. Further, to the effect that Defendant knew that Plaintiff did not want to have auto-dialed calls placed to her cell phone by Defendant, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, treble damages equal to up to three times the statutory damages.

### COUNT IV – MICHAEL MOCCIA
**Violation of the Telephone Consumer Protection Act – 47 U.S.C. § 227(c)**
**On Behalf of Plaintiff and the No Consent Class**

68. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-51.

69. Upon information and belief, the foregoing acts and omissions of Defendant, its affiliates, or agents constitute multiple violations of FCC regulation by making telemarketing solicitations despite lacking:

    a. A written Do-Not-Call policy, available upon demand;

    b. Training for its employees on how to handle a Do-Not-Call request;

    c. An internal Do-Not-Call list; and

    d. A subscription to the national Do-Not-Call lists by which it could scrub cell phone numbers to ensure compliance with the national Do-Not-Call requirements, all in violation of C.F.R. § 64.1200(d).

### COUNT V – DOES 1-10
**Violation of the Telephone Consumer Protection Act – 47 U.S.C. § 227(b)**
**On Behalf of Plaintiff and the No Consent Class**

70. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-51.

71. Defendant made unsolicited auto-dialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class

without their prior express written consent in an effort to generate business for Defendant's company.

72. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

   a. By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or pre-recorded voice; and

   b. The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

73. Further, Defendant made the calls using equipment that played a pre-recorded voice or had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers, en masse, simultaneously and without human intervention.

74. By making the unsolicited calls to Plaintiff and members of the Class's cellular telephones without prior express written consent and by utilizing a pre-recorded voice or ATDS, Defendant violated 47 U.S.C. § 227(b).

75. As a result of Defendant's unlawful conduct, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

76. Further, to the effect that Defendant knew that Plaintiff did not want to have auto-dialed calls placed to her cell phone by Defendant, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under

Section 227(b)(3)(B), are each entitled to, inter alia, treble damages equal to up to three times the statutory damages.

### COUNT VI – DOES 1-10
### Violation of the Telephone Consumer Protection Act – 47 U.S.C. § 227
### On Behalf of Plaintiff and the No Consent Class

77. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-51.

78. Upon information and belief, the foregoing acts and omissions of Defendant, its affiliates, or agents constitute multiple violations of FCC regulation by making telemarketing solicitations despite lacking:

    a. A written Do-Not-Call policy, available upon demand;

    b. Training for its employees on how to handle a Do-Not-Call request;

    c. An internal Do-Not-Call list; and

    d. A subscription to the national Do-Not-Call lists by which it could scrub cell phone numbers to ensure compliance with the national Do-Not-Call requirements, all in violation of C.F.R. § 64.1200(d).

### Prayer for Relief

WHEREFORE, Plaintiff, on behalf of herself and the class, prays for the following relief:

    e. An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing their counsel as Class Counsel;

    f. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of Plaintiff and the Class Members;

    g. An order declaring that Defendants' actions, as set out above,

      violate the TCPA;

h. A declaratory judgment that Defendants' telephone equipment constitutes an automatic telephone dialing system under the TCPA;

i. An injunction requiring Defendants to cease all unsolicited text messaging activities and otherwise protecting the interests of the Class;

j. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

k. An award of treble damages if willfulness is shown; and

l. Such other and further relief that the Court deems reasonable and just.

## Jury Trial Demand

Plaintiff demands a jury trial on all issues so triable.

Respectfully Submitted this 8th Day of January, 2025.

      LAW OFFICES OF TODD M. FRIEDMAN, P.C.

      By:  <u>/s/ Todd M. Friedman</u>
             Todd M. Friedman
             Law Offices of Todd M. Friedman
             Attorney for Plaintiff